IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FAIRBANKS AERO SERIVCES, INC., TIMOHTY BRISTOR and LAUREEN KNUUTILA, Personal Representative of the ESTATE OF TONY KNUUTILA,<br><br>　　　　　Defendants. | No. 4:23-cv-00016-HRH |

# O R D E R

Cross-Motions for Summary Judgment

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaratory judgment as to the scope of coverage under a State Farm commercial liability umbrella policy, Policy No. 92BNP6306 (the "umbrella policy"), and a State Farm auto policy, Policy No. 1097135-D14-02 (the "auto policy"), both of which were issued to defendant Fairbanks Aero Services, Inc. ("Aero Services").[1]  Aero Services and defendant Timothy Bristor, president of Aero Services, have counterclaimed for

---

[1] Docket No. 1.

declaratory judgment as to coverage under the umbrella policy and the auto policy.[2] Aero Services and Bristor have also counterclaimed against State Farm for breach of contract, breach of the covenant of good faith and fair dealing, and estoppel.[3] Aero Services and Bristor moved for partial summary judgment.[4] State Farm opposed defendant's motion, and cross-moved for summary judgment.[5] Defendants replied to the motion for partial summary judgment and opposed plaintiff's cross-motion for summary judgment.[6] Plaintiff replied to the cross-motion for summary judgment.[7] Co-defendant Laureen Knuutila and the Estate of Tony Knuutila have joined with Aero Services and Bristor's foregoing motions.[8] Oral argument was requested and has been heard.

Facts

The material facts in this case are not in dispute. On January 8, 2023, Bristor, while driving a Ford F350 truck he personally owned, collided with a vehicle driven by Tony Knuutila. The collision resulted in Mr. Knuutila's death. Defendant Laureen Knuutila, personally and as the representative of Mr. Knuutila's Estate, filed a wrongful death lawsuit against Bristor and Aero Services in Alaska Superior Court.

At the time of the accident, Bristor's truck was insured under an automobile

---

[2] Docket No. 12 at pp. 9-15 (Counterclaims I, II).

[3] Id. at pp. 15-18 (Counterclaims III, IV, and V).

[4] Docket No. 23.

[5] Docket No. 25.

[6] Docket No. 27.

[7] Docket No. 30.

[8] Docket Nos. 24, 28.

liability insurance policy issued by State Farm. Under the undisputed terms of that policy, Bristor is the named insured and his Ford F350 truck is the insured vehicle. Pursuant to that policy, State Farm has agreed to defend and indemnify Bristor without reservation with respect to the claims against him in the underlying wrongful death lawsuit.

Aero Services had the aforementioned auto policy and umbrella policy in place at the time of the accident. State Farm disputes additional coverage for the accident under these two policies. It argues that the auto policy covers Aero Services only for the use of a non-owned vehicle for purposes of its business and that Bristor was not using his truck for Aero Services business at the time of the accident.

Bristor filed a supporting affidavit to describe his ownership and use of the Ford F350 truck at issue in this case.[9] He asserts that both he and the vice president of Aero Services, Danny Stepp, owned Ford F350 trucks that they used personally and in furtherance of the Aero Services business. He asserts that Aero Services originally bought the trucks with the intention that Bristor and Stepp would use them on and off the job. After the trucks had been depreciated for Aero Services' tax purposes, Aero Services sold one truck to Bristor and one to Stepp. The company did not replace the trucks after the sale; rather, Bristor and Stepp continued to use the trucks for business purposes when needed. While the trucks were owned by Bristor and Stepp, Aero Services continued to pay all expenses associated with the trucks. Both trucks displayed

---

[9] Docket No. 23-1.

Aero Services signage. Because the business involved repairing and servicing large and fixed-site equipment such a motors, generators, and compressors, Bristor and Stepp drove their trucks to perform repair work at the customer's location. They brought their own tools and equipment, which they stored in the cabs of their trucks. They are the only two Aero Services personnel who perform repair work, and at least one of them is always on call outside of normal business hours in case of a customer emergency.

At the time of the accident, Bristor was driving to Home Depot. State Farm presented evidence that Bristor was driving to Home Depot on a personal errand that was not related to the business of Aero Services.[10] He did not receive any services calls and had not performed errands or work for Aero Services that day.[11]

Defendants assert that Aero Services' auto policy covers Bristor's use of the truck in all circumstances, whether or not he was driving it for business purposes at the time of the accident. They rely on Endorsement 6030ED of the auto policy, arguing that it was included to cover Bristor's use of the truck. Alternatively, they argue that the endorsement, at a minimum, creates an ambiguity as to what vehicle is insured under the Aero Services auto policy, which must be resolved in their favor. State Farm counters that defendants' reading of the insurance policy is unreasonable and that the policy, read as a whole, functions as a standard non-owned automobile liability policy.

---

[10] Docket 25-3.

[11] Id.

Relevant Policy Provisions

Umbrella Policy

The parties agree that the Aero Services umbrella policy provides extended coverage for Aero Services to the extent the underlying auto policy provides coverage for the accident at issue. Coverage for the accident under the umbrella policy is triggered if Bristor's truck is a covered vehicle under the auto policy. If the auto policy does not provide coverage for Bristor's truck, then there is no extended coverage under the umbrella policy.

Auto Policy

What the court refers to as the "auto policy" includes the standard State Farm car policy booklet, Policy Form 9802A.[12] The auto policy consistently refers to Form 9802A as having to do with a "car." In a single exception to the foregoing, the declarations page of the auto policy makes reference to a "non-owned auto."[13] The court believes that it and the parties have used the term "auto" and the term "car" or the term "vehicle" interchangeably, and there is no distinction or difference between them. Relevant to this case is a single vehicle—which is in fact a Ford F350 truck owned by Bristor.

Relevant to this case, the Aero Services auto policy consists of the following parts: 1) declarations page; 2) car policy booklet (form 9820A); and 3) two endorsements: Endorsement 6165CA (Employer's Non-Owned Car Liability Coverage)[14] and

---
[12] Docket No. 1-2.

[13] Id. at p. 2 (Declarations Page).

[14] Id. at p. 42.

Endorsement 6030ED (Business Name Insured).[15]

Car Policy Booklet

The car policy booklet provides that State Farm will cover any damages an insured becomes liable to pay for bodily injury to others "caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy" and will "defend an insured in any claim or lawsuit" regarding that accident.[16] The Liability Coverage section sets forth the definition of an insured:

> **Insured** means:
> 1. **you** and **resident relatives** for
>    a. The ownership, maintenance, or use of:
>       (1) **your car**;
>       (2) a **newly acquired car**; or
>       (3) a **trailer**; and
>    b. The maintenance or use of:
>       (1) A **non-owned car**; or
>       (2) A **temporary substitute car**.[17]

The booklet defines "you" as the named insured on the declarations page; here, the named insured is Fairbanks Aero Services, Inc.[18] It defines "your car" as the vehicle identified on the declarations page; that vehicle is listed as "NONOWNED."[19]

Endorsement 6030ED

Endorsement 6030ED, entitled "Business Named Insured," is appended to the auto

---

[15] Id. at p. 52.

[16] Doc. 1-2 at p. 9 (Form 9802A, Liability Coverage, at p. 6).

[17] Id. at p. 8 (Form 9802A, Liability Coverage, at p. 5).

[18] Id. at p. 8 (Form 9802A, Definitions, at p. 5).

[19] Id.

policy. The endorsement states as follows:

> This endorsement is part of the policy. **Because of the type of named insured shown on the Declarations Page of this policy and the changes made below, all references to *resident relatives* and *non-owned cars* in the policy are deleted.** Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.[20]

It then changes the definition of "insured" as follows:

> **Insured** means:
> 1. **you** for:
>    a. The ownership, maintenance, or use of:
>       (1) **your car**,
>       (2) a **newly acquired car**, or
>       (3) a **trailer**, and
>    b. The maintenance or use of a
>       (1) **temporary substitute car**, or
>       (2) a "rented motor vehicle" …
> 2. any **person** for his or her use of;
>    a. **your car**,
>    b. a **newly acquired car**,
>    c. a **temporary substitute car**, or
>    d. a **trailer** while attached to a car described … above.
>
> Such vehicle must be used within the scope of **your** consent.[21]

Endorsement 6165CA

Another endorsement is appended to the auto policy: Endorsement 6165CA, entitled "Employers Non-Owned Car Liability Coverage." It verifies that the endorsement is a part of the auto policy and that "[e]xcept for the changes [the] endorsement makes, all other provisions of the policy remain the same and apply to this

---

[20] Doc. 1-2 at p. 55 (Endorsement 6030ED at p. 1).

[21] Id.

endorsement."[22] It then provides an applicable definition of what constitutes a "non-owned car" for an employer:

> **Non-Owned Car** means:
> 1. a land motor vehicle designed for use primarily on public roads;
> …
> **Non-Owned Car** does not include any vehicle that is:
> 1. **owned by you**; or
> 2. used under contract on **your** behalf or loaned to **you**, unless that vehicle is **owned by**:
>     a. any of **your** employees;
>     b. any of **your** business partners;
>     c. any of **your** executive officers; or
>     d. any **person** who resides primarily with **you** or a **person** described in a., b. or c. immediately preceding.[23]

Endorsement 6165CA also addresses the term "insured." It states that the endorsement changes the definition as follows:

> **Insured** means:
> 1. **you** for the use of a **non-owned car** in **your** business; and
> 2. any other **person** or organization vicariously liable for the use of a **non-owned car** in **your** business by an **insured** as defined in item 1 above, but only for such vicarious liability.
>
> **Insured** does not include:
> 1. the owner of a **non-owned car**, or
> 2. the United States of America or any of its agencies.[24]

Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[22] Doc. 1-2 at p. 42 (Endorsement 6165CA at p. 1).

[23] Id.

[24] Id.

56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Arandell Corp. v. Centerpoint Energy Servs., Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)). "Each motion must be considered on its own merits." Fair Hous. Council of Riverside Cty., Inc., 249 F.3d at 1136.

Discussion

Interpretation of Insurance Agreements under Alaska Law

An insurer's obligation to defend and indemnify is determined by the terms of the insurance policy. Devine v. Great Divide Ins. Co., 350 P.3d 782, 786 (Alaska 2015). When the relevant facts are uncontroverted, the interpretation of the insurance policy's language is a question of law for the court. Hale v. Fireman's Fund Ins. Co., 731 P.2d 577, 579 (Alaska 1987); see also State Farm Fire and Cas. Co. v. Millman, 413 F. Supp. 3d 940, 951 (D. Alaska 2019) ("Under Alaska law, interpreting insurance policy language is a question of law, and is thus appropriate for resolution on summary judgment.").

When interpreting an insurance policy, courts consider four factors: "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions." Allstate v. Teel, 100 P.3d 2, 4 (Alaska 2004). These factors allow a court to identify an interpretation that "honor[s] an insured's reasonable expectations." State Farm Mut. Auto Ins. Co. v. Dowdy, 192 P.3d 994, 998 (Alaska 2008). The "objectively reasonable expectations of applicants . . . regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." C.P. ex rel. M.L. v. Allstate Ins. Co., 996 P.2d 1216 (Alaska 2000) (quoting Bering Strait Sch. Dist. v. RLI Ins. Co., 873 P.2d 1292, 1295 (Alaska 1994)). Consequently, language in the policy "is construed in accordance with ordinary and customary usage." Dowdy, 192 P.3d at 998. Additionally, any ambiguities in an insurance policy must be construed in

favor of the insured.  Id.  "[A]mbiguities only exist when there are two or more reasonable interpretations of particular policy language."  Id.  The reasonableness of a party's interpretation must be supported by the contract as a whole and any extrinsic evidence.  C.P. ex rel. M.L., 996 P.2d at 1222 n. 38.  When reviewing the language of the disputed provisions in an insurance contract, courts "construe grants of coverage broadly and interpret exclusions narrowly."  Id. at 1223.  However, the court, when possible, must "give effect to all parts of the instrument" and must support "an interpretation which gives a reasonable meaning to all [the policy's] provisions" over "one which leaves a portion of the writing useless or inexplicable."  Modern Constr., Inc. v. Barce, Inc., 556 P.2d 528, 530 (Alaska 1976).

Interpretation of the Aero Services Auto Policy

The Aero Services auto policy language which forms the basis for plaintiff's declaratory action and defendant's Counterclaims I and II consists of the following:

Declarations Page[25]

First, the declarations page identifies Aero Services as the "named insured."

Second, the "your car" portion of the declarations page lists "non-owned" as the make of the car in question and "auto" as the body style.[26]  In short, the declarations page does not identify a specific insured vehicle.  Rather, the declarations page informs us that the Aero Services auto policy was issued for the purpose of insuring non-owned vehicles.

---

[25] Docket No. 1-2 at p. 2.

[26] Id.

Finally, the declarations page tells us that the Aero Services auto policy is subject to two amendatory endorsements: Endorsement 6030ED, entitled "Business Named Insured," and Endorsement 6165CA, entitled "Employers Non-Owned Car Liability Coverage."[27] These endorsements amend the otherwise applicable terms of the State Farm car policy booklet.

State Farm Car Policy Booklet[28]

The car policy booklet defines the term "this policy" to include the declarations page, the booklet itself, and any endorsements listed on the declarations page.[29] The car policy booklet defines certain terms. "Non-owned car" means a vehicle that is in the insured party's lawful possession but is not owned by the named insured.[30] The term "temporary substitute car" means a vehicle lawfully possessed by the person operating the vehicle and which replaces the declared vehicle for a short period of time while the named insured's use of the declared vehicle is out of use due to breakdown, repair, servicing, damage, or theft.[31]

Endorsement 6030ED[32]

Endorsement 6030ED has application when the named insured is a business entity. The endorsement reads in pertinent part, "[b]ecause of the type of named insured shown

---

[27] Id.
[28] Id. at p. 4.
[29] Id. at p. 6.
[30] Id. at p. 7.
[31] Id. at p. 8.
[32] Id. at p. 55.

on the Declarations Page of this policy and the changes made below, all references to *resident relatives* and *non-owned cars* in the policy are deleted[]" in favor of the definitional and liability coverage terms spelled out in the endorsement.[33] Endorsement 6030ED affords liability coverage for the business entity's own vehicle, a newly acquired vehicle, or its use of a temporary substitute vehicle. Additionally, under Endorsement 6030ED, an insured includes any person using the business's own, newly acquired, or temporary substitute vehicle with consent.[34]

Endorsement 6165CA[35]

As reflected by the title of Endorsement 6165CA, it is intended to address liability coverage for an employer's use of an employee's vehicle in connection with the named insured's business. A "non-owned car" is "a land motor vehicle designed for use primarily on public roads[.]"[36] The term "non-owned car" does not include any vehicle owned by the named insured, nor does it include "loaned" vehicles, "unless that vehicle is owned by ... any of your employees[.]"[37]

The liability coverage portion of Endorsement 6165CA expressly extends liability coverage to "*you* for the use of a *non-owned car* in *your* business[.]"[38] In addition, liability coverage is extended to "any other *person*" who is "vicariously liable for the use

---

[33] Id.

[34] Id.

[35] Id. at 42.

[36] Id.

[37] Id.

[38] Id.

ORDER – Motion to Dismiss 13

of a *non-owned car* in *your* business[.]"³⁹ The liability coverage portion of Endorsement 6165CA expressly does not include the owner of a non-owned car.

State Farm argues that Bristor is not covered with respect to the accident under the Aero Services auto policy because of the definition of "insured" in Endorsement 6165CA, which states that it does not include "the owner of a non-owned car." The court concludes that Bristor is not insured for purposes of Endorsement 6165CA because (1) he was the owner of the vehicle involved in the accident, and (2) the underlying litigation does not assert vicarious liability against Bristor.

State Farm further argues that Aero Services is not covered with respect to the accident under the auto policy because its coverage for non-owned vehicles is limited to vehicles that are involved in accidents when being used in furtherance of Aero Services' business. The court concludes that for purposes of Endorsement 6165CA, Aero Services is not covered for the accident because it occurred when Bristor was driving the truck about his own personal business.

Defendants object to this interpretation of the Aero Services auto policy. They assert that the definition of "insured" in Endorsement 6165CA is not applicable here because Endorsement 6030ED deletes all references to "non-owned car," making that term in Endorsement 6165CA inoperable. In other words, they contend that Endorsement 6030ED explicitly supersedes Endorsement 6165CA, negating the limitations placed on coverage for a "non-owned car" in that endorsement.

---

³⁹ Id.

More generally, defendants assert that State Farm was aware that Bristor owned the accident vehicle, that Aero Services and Bristor planned to fully insure the use of the accident vehicle, and that State Farm intended to provide broader coverage for non-owned vehicles used with Aero Services' knowledge and consent.

That brings us to the crux of the parties' dispute with regard to coverage under the Aero Services auto policy: what is the effect of the provision of Endorsement 6030ED which purports to delete "all references to ... non-owned cars" from the auto policy? Based upon this deletion and the listing of a "non-owned auto" under the "your car" section on the declarations page, defendants argue that both Aero Services and Bristor are "insured[s]" under the auto policy for the purpose of liability coverage with respect to the accident as that term is defined in Endorsement 6030ED.

The parties' arguments as summarized above do not adequately address the conflict between Endorsement 6030ED and Endorsement 6165CA. The facts of this case (the facts of the accident) are undisputed. There is no extrinsic evidence relevant to the interpretation of the Aero Services auto policy. Therefore, the court looks to the Aero Services auto policy as a whole and the disputed language for purposes of interpreting the policy in question.

It is undisputed that Bristor owned the accident vehicle. It is undisputed that Bristor was an employee of Aero Services and was using the accident vehicle in furtherance of his personal affairs, not Aero Services' business. It is undisputed that the accident vehicle was a "non-owned car" for purposes of the Aero Services auto policy. It is undisputed that Aero Services is the named insured in the Aero Services auto policy.

ORDER – Motion to Dismiss 15

Case 4:23-cv-00016-HRH    Document 44    Filed 11/06/24    Page 15 of 20

The court views the intentions of the parties as regards the Aero Services auto policy from the perspective of the overall insurance plan that the parties put in place for the accident vehicle. The court does not doubt that, being aware of the ownership of the Ford F350 truck and of Aero Services' use of that vehicle in connection with Aero Services' business, the parties intended to put together an appropriate vehicular insurance plan for both Bristor's and Aero Services' use of the accident vehicle.

Given Bristor's ownership of the Ford F350 truck, Bristor needed automobile liability coverage. A separate State Farm policy insuring Bristor was put in place and is the basis for State Farm defending the underlying Knuutila wrongful death action. Recognizing as the parties did that Aero Services was a business entity, not an individual, the parties arranged for the Aero Services auto policy to include Endorsement 6030ED. That endorsement had the effect of inverting what would otherwise have been an individual vehicular insurance policy to one designed for a business entity. Recognizing as the parties did that Bristor and Aero Services were sharing the use of the Ford F350 truck, and recognizing that Bristor was separately insured for that vehicle, Aero Services needed liability coverage in connection with its use of an employee's (Bristor's) truck for its business purposes. Endorsement 6165CA was incorporated into the basic State Farm car policy booklet, and plainly would have come into play had Bristor been on an Aero Services job at the time of the accident in question. He wasn't on such a call, but, as a consequence of Endorsement 6165CA, both Bristor and Aero Services have auto liability coverage in connection with their shared use of Bristor's truck.

Under the factual circumstances of this case, namely that Aero Services had no

ORDER – Motion to Dismiss 16

Case 4:23-cv-00016-HRH   Document 44   Filed 11/06/24   Page 16 of 20

owned vehicle, we might wonder why Endorsement 6030ED was included. The simple answer is that the Ford F350 truck that Bristor and Aero Services were sharing might have been sidelined (by accident or mechanical failure) such that Aero Services would have needed either to purchase a replacement vehicle or, employing the provisions of Endorsement 6030ED, to obtain a substitute vehicle.

Defendants in substance argue that Endorsement 6030ED had the effect of taking Endorsement 6165CA out of the auto policy because Endorsement 6030ED deleted references to "non-owned cars." In light of the undisputed fact that Bristor and Aero Services were in an employee/employer relationship, by which they shared access to and use of the accident vehicle, interpreting Endorsement 6165CA out of the auto policy would contravene the reasonable expectations of both Bristor and Aero Services. Surely, they expected that Aero Services would be covered when using Bristor's truck. Reading the auto policy as a whole—that is, including both the 6030ED and 6165CA endorsements—State Farm presented Aero Services and Bristor with a meaningful insurance program, one consistent with the way in which Aero Services and Bristor in fact did business.

Defendants' reading of the auto policy, where Endorsement 6030ED deletes all references to "non-owned cars" including in Endorsement 6165CA, would render Endorsement 6165CA meaningless. Moreover, defendants' argument for the deletion of Endorsement 6165CA in favor of Endorsement 6030ED does not achieve the coverage which Bristor seeks. Rather, what Bristor argues for creates a gap in coverage that does not otherwise exist. Aero Services is the named insured for purposes of the entire auto

ORDER – Motion to Dismiss 17

policy. As written, Endorsement 6030ED unambiguously provides that "insured" means Aero Services for the ownership, maintenance, or use of "your car" or a temporary substitute car. The accident vehicle is Bristor's car, not Aero Services' car.

Bristor is insured as to liability for the suit brought by defendants Laureen Knuutila and the Estate of Tony Knuutila based upon his (Bristor's) use of the Ford F350 truck for his personal purposes. Had Bristor been on a job for Aero Services at the time of the accident, Aero Services would also have been insured for the accident; and, if there were a vicarious liability claim made, Bristor would be insured as to that kind of claim under the Aero Services auto policy. Finally, had the Ford F350 truck been sidelined by a different accident or a mechanical problem and had Aero Services secured the use of a substitute vehicle, Aero Services would have been insured for that substitute vehicle. There is no "gap" in the insurance available to defendants for their respective use of the Ford F350 truck. But defendants' contention that all references to "non-owned cars" be deleted from the Aero Services auto policy creates a gap, which the parties surely did not intend.

The court's interpretation of the Aero Services auto policy is in line with what is typical for a commercial non-owned auto liability policy. The "common purpose" of these non-owned policy provisions is to "'provide[] employers with protection from liability based on the doctrine of respondeat superior arising out of an employee's commission of a tort while using their own personal vehicles in the employer's business.'" Union Standard Insurance Co. v. Hobbs Rental, 566 F.3d 950, 954 (quoting Lee R. Russ Thomas F. Segalla, 8A Couch on Insurance § 118.41 (3d ed. 2008)).

ORDER – Motion to Dismiss 18

Recognizing that the court might reach the foregoing conclusion, defendants argue in the alternative that Bristor was using the Ford F350 truck in furtherance of Aero Services' business at the time of the accident because Bristor was on call 24-hours-a-day and stored work materials in the accident vehicle. In addition, the truck doors bore Aero Services' logo. As a matter of law, those circumstances do not amount to doing Aero Services' business. These arguments were considered and rejected in cases which the court finds persuasive. For example, in <u>Alaska National Insurance Co v. Bryan</u>, 104 P.3d 1 (Wash. Ct. App. 2004), the court concluded that an employee's 24-hour-on-call status did not transform his recreational driving into company business for purposes of accident coverage under the employer's non-owned auto insurance policy. In <u>Byrd v. Smith</u>, 904 N.E.2d 962 (Ohio. Ct. C.P. 2007), the court concluded that a business sign on a vehicle driven by an employee who caused an accident while engaging in personal conduct was merely incidental advertising and did not bring the conduct within the scope of employment for purposes of auto insurance coverage. Likewise, in <u>United Financial Casualty v. Smith</u>, No. 16-cv-037033, 2017 WL 1330559 (N.D. Cal. April 11, 2017), the court did not find the presence of work tools in the employee's vehicle dispositive for purposes of liability coverage under the employer's non-owned auto insurance policy. The fact that tools stored in the accident vehicle were used for business did not mean that the vehicle was being used for business purposes.

## Conclusion

The introductory language of Endorsement 6030ED, which purports to delete from the Aero Services policy all reference to non-owned vehicle: (1) does not exclude the

non-owned vehicle term of the declarations page of the Aero Services auto policy, and (2) does not exclude Endorsement 6165CA for purposes of the Aero Services auto policy.

Defendants' motion for partial summary judgment as to defendants' counterclaims I and II is denied. Plaintiff's motion for summary judgment is granted. The court declares that State Farm policies—Policy No. 92BNP6306 (the "umbrella policy") and Policy No. 1097135D1402 (the "auto policy")—do not afford defendants automobile liability coverage for purposes of the Knuutila wrongful death action.

DATED at Anchorage, Alaska this 6th day of November, 2024.

/s/ H. Russel Holland
United States District Judge