WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>        Plaintiff,<br><br> vs.<br><br>FAIRBANKS AERO SERVICES, INC., TIMOTHY BRISTOR, and LAUREEN KNUUTILA, Personal Representative of the ESTATE OF TONY KNUUTILA,<br><br>        Defendants. | No. 4:23-cv-00016-HRH |

O R D E R

Motions for Summary Judgment[1]

Plaintiff State Farm Fire and Casualty Co. ("State Farm") moves for summary judgment[2] as to defendants' three remaining counterclaims in this case.[3] The motion is opposed by Defendant Fairbanks Aero Services ("Aero Services") and Defendant Timothy

---

[1]Docket Nos. 45, 46, 47.

[2]Docket No. 45.

[3]Counterclaims III, IV, and V.

ORDER – Motions for Summary Judgment    - 1 -

Bristor ("Bristor").[4] State Farm replied.[5] Aero Services and Bristor filed their own motion for summary judgment,[6] as did Defendant Laureen Knuutila.[7] State Farm opposed both motions.[8] Both sets of defendants replied.[9] Oral argument has not been requested and would not be of assistance to the court.

## Procedural History

The basis for this action is an accident that occurred on January 8, 2023, when Bristor, driving a pickup truck he personally owned, ran a red light and struck a vehicle driven by Tony Knuutila. The collision resulted in Tony Knuutila's death. Bristor filed a claim with State Farm under his individual auto insurance policy, which covered his pickup truck. Thereafter, it became clear that this policy had a $500,000 bodily injury limit, which was likely insufficient to fully cover his potential liability. An issue then arose as to whether a non-owned auto policy and a commercial liability umbrella policy issued by State Farm to Bristor's business, Aero Services, would provide coverage for the accident.

State Farm subsequently filed this lawsuit, seeking declaratory judgment as to the scope of coverage under Aero Services' policies.[10] Bristor and Aero Services

---

[4]Docket No. 49.

[5]Docket No. 54.

[6]Docket No. 47.

[7]Docket No. 46.

[8]Docket Nos. 51, 52.

[9]Docket Nos. 53, 55.

[10]Docket No. 1.

counterclaimed for declaratory judgment on the issue of coverage.[11] They also counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, and estoppel.[12]

The parties filed summary judgment motions on the issue of coverage. This court ruled in favor of State Farm, declaring that the policies it issued to Aero Services—the non-owned auto policy and the commercial liability umbrella policy—do not afford defendants liability coverage for the underlying accident.[13] Defendants' state law counterclaims, wherein they seek insurance coverage by estoppel and an award of damages, remain. All three counterclaims are based on the same allegation and argument: that State Farm improperly investigated a coverage defense without first notifying Bristor of the potential conflict. Both State Farm and defendants move for summary judgment in their respective favor on this remaining issue.

## Facts

The circumstances surrounding State Farm's discovery of Aero Services' insurance policies and its inquiry into Bristor's potential coverage under these policies is not in dispute. The facts and timing of events are set forth in State Farm's claim file and are summarized as follows:

**January 8:** The underlying accident occurred on January 8, 2023. Bristor reported the collision to State Farm.[14] He filed the claim under his own auto liability insurance

---

[11]Docket No. 12 at 9-15 (Counterclaims I, II).

[12]Docket No. 12 at 15-18 (Counterclaims III, IV, and V).

[13]Docket No. 44.

[14]Docket No. 45-2.

policy (No. 1088847E2702).[15]

**January 9:** State Farm claim specialist Carol Newman ("Newman") contacted Bristor regarding his claim on January 9, 2023. Bristor reported that the purpose of his trip at the time of the accident was "running errands."[16] He admitted that he "dazed out and missed the red light" and struck the other vehicle.[17] State Farm accepted coverage under Bristor's auto policy.[18]

**January 11:** On January 11, 2023, Newman talked to Tony Knuutila's widow, Defendant Laureen Knuutila, and learned that Tony had passed away and that Laureen would be hiring an attorney.[19] Newman then called Bristor to inform him that Tony had died. She advised him that his policy was limited to $500,000 for bodily injury and warned him that he was at risk of liability in excess of the policy limits.[20] He asked if he needed to hire an attorney. Newman told him he had a right to hire an attorney but that under the policy State Farm would hire an attorney at its expense if the need for a defense arose.[21] She stated that State Farm's goal would be to settle any claim by the Knuutilas within the policy limits.[22]

---

[15]Docket No. 45-2 (referencing Bristor as the named insured and noting the limits of the policy as $500,000); Docket No. 12 at ¶ 12.

[16]Docket No. 45-2 (noting "POT" as "Running Errands").

[17]Docket No. 45-2.

[18]Docket No. 45-2.

[19]Docket No. 45-3.

[20]Docket No. 45-3.

[21]Docket No. 45-3.

[22]Docket No. 45-3.

**January 11:** That same day, Newman sent a letter to Bristor.[23] That letter reiterated their previous discussion. She warned him of the risk of liability exposure beyond the policy's limits. She informed him that because of his potential personal liability, he could "employ an attorney of [his] choosing, at [his] own expense, to represent [him] personally and to appear in this matter." However, she explained that in the event State Farm could not settle any future claim made by the Knuutilas, State Farm would "select and compensate attorneys to defend [him]."[24]

**January 26:** Newman received a letter from the Knuutila's attorney on January 26, 2023. The attorney requested copies of Bristor's insurance policies and copies of any insurance policies held by Bristor's business, Aero Services.[25] Newman then contacted Bristor and asked him about additional insurance policies. Bristor disclosed that he had other personal auto policies and a homeowner's policy and that he had a commercial vehicle policy and commercial liability umbrella policy in Aero Services' name.[26] Bristor then reported he "was not on company business when the accident occurred" but rather "was running Sunday errands."[27] Newman advised Bristor that she would determine whether Aero Services's policies could provide coverage.[28]

**January 26:** That same day, Newman made a note that she had tried to contact

---

[23]Docket No. 45-5.

[24]Docket No. 45-5.

[25]Docket No. 45-6; Docket No. 55-1 at 12.

[26]Docket No. 45-6.

[27]Docket No. 45-6.

[28]Docket No. 45-6.

ORDER – Motions for Summary Judgment     - 5 -

Bristor's local insurance agent about other policies.[29]

**January 27:** On January 27, 2023, Newman made a note in the claim file that she had talked to the agent who prepared the commercial policies for Aero Services.[30] The agent informed Newman that the commercial policies were in Aero Services' name and that they had initially planned to include the pickup truck at issue with Aero Services' policies, but the truck was titled and registered to Bristor and his wife, not the business. She further informed Newman that the commercial liability umbrella policy covered losses related to Aero Services' business and confirmed that Bristor did not have a personal liability umbrella policy. Newman shared with the agent that Bristor reported he was not engaging in company business on the day of the accident, and the agent "agreed" that the underlying accident would not be covered under Aero Services' policies.[31]

**January 30:** The case file notes that Newman had a follow-up conversation with Bristor on January 30, 2023.[32] She advised him of his right to hire his own attorney and of the fact that State Farm would likely send the claim file to defense counsel at its expense. She informed Bristor that the Knuutila's attorney was reasserting his request to have copies of all personal and commercial policies. Bristor did not want to share any business policies. Newman then advised Bristor that withholding information might just prompt the attorney to file suit against all parties in order to obtain the policies anyway. Newman then asked Bristor about the purpose of his errand that day, informing him that State Farm

---

[29]Docket No. 45-6.

[30]Docket No. 45-7.

[31]Docket No. 45-7.

[32]Docket No. 45-8.

ORDER – Motions for Summary Judgment    - 6 -

needed to know if "there [was] any way his activities could be linked to the business."[33] He expanded upon the details of his errand on the day of the accident, noting that it was personal. He acknowledged that he knew it would help for coverage purposes if he could say he was buying supplies for the business, but he could not do so.[34]

**February 9:** State Farm assigned Bristor defense counsel around February 9, 2023.[35]

**February 13:** Aero Services submitted a claim for the underlying accident under its commercial liability umbrella policy around February 13, 2023.[36]

**March 7:** State Farm issued a reservation of rights letter to Aero Services with regard to that claim on March 7, 2023, acknowledging the dispute about coverage for the accident under Aero Services' business policies.[37]

**March 23:** State Farm issued another reservation of rights letter to Aero Services, as well as its owners, Bristor and his co-owner Danny Stepp, on March 23, 2023. The letter again acknowledged the coverage issue and noted that it "reserve[s] [the] right to deny defense or indemnity to you" because "[i]t is questionable" whether the truck at issue was a covered auto and whether Bristor was using the truck for business purposes at the time of the accident so as to be a covered insured.[38]

**March 27:** That same letter was sent via email to Bristor and his defense counsel

---

[33]Docket No. 45-8.

[34]Docket No. 45-8.

[35]Docket No. 45-9.

[36]Docket No. 45-10.

[37]Docket No. 45-11.

[38]Docket No. 45-12.

on March 27, 2023.[39]

**April 2023:** Shortly thereafter, Bristor hired independent counsel, which has been paid for by State Farm.[40]

**August 11:** State Farm filed this complaint for declaratory judgment through its own counsel, Farley & Graves, P.C., on August 11, 2023.[41]

**September 5:** Tony Knuutila's estate and Laureen Knuutila filed suit in state court against Bristor and Aero Services on September 5, 2023.[42]

The foregoing facts are material to the court's disposition of the pending motions for summary judgment. The foregoing facts are not in dispute.

Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also

---

[39]Docket No. 45-14.

[40]Docket No. 45-15 at ¶ 4.

[41]Docket No. 1.

[42]Docket No. 12 at ¶ 10 (Case No. 4FA-23-02068-CI).

to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Arandell Corp. v. Centerpoint Energy Servs., Inc., 900 F.3d 623, 628-29 (9th Cir. 2018) (quoting T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)). "Each motion must be considered on its own merits." Fair Hous. Council of Riverside Cty., Inc., 249 F.3d at 1136.

All three of the pending motions for summary judgment raise the same legal issues: did State Farm breach its insurance contract with Aero Services, should State Farm be estopped from denying coverage of Aero Services for the accident in question, and did State Farm breach the implied covenant of good faith and fair dealing which Alaska law makes part of a breach of contract or tort claim.

Discussion

<u>Breach of Contract and Coverage by Estoppel</u>

While presented as separate claims, defendants' claims for breach of contract and coverage by estoppel are part and parcel of the same cause of action. They argue that State Farm agents questioned Bristor about the purpose of his errand on the day of the accident before adequately notifying him that there was a conflict about coverage under Aero

ORDER – Motions for Summary Judgment     - 9 -

Services' insurance policies. Defendants assert that this questioning was a breach of the duty of loyalty associated with the insurer's obligation to defend and indemnify under the insurance contracts and that the appropriate remedy is coverage by estoppel. That is to say, they ask that State Farm be estopped from denying coverage under Aero Services' policies.

Under Alaska law, estoppel has four elements: (1) the party to be estopped must know the facts; (2) the party must intend that its conduct be acted on (or must act in a way that the party asserting estoppel has a right to believe is intended to be acted on); (3) the party seeking estoppel must be ignorant of the true facts; and (4) the party seeking estoppel must have relied on the conduct to its detriment. O'Neill Investigations, Inc. v. Ill. Emp'rs Ins. of Wausau, 636 P.2d 1170, 1178 (Alaska 1981). "In the insurance context, most cases turn on the last element—whether the insured was prejudiced by the insurer's conduct." Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson, 838 F.3d 976, 982 (Alaska 2016).

Defendants rely on Lloyd's & Inst. of London Underwriting Cos. v. Fulton, 2 P.3d 1199 (Alaska 2000). Fulton involved a claim for insurance coverage by estoppel. In that case, a worker was injured on a fishing vessel, and the owner sought coverage under the vessel's insurance policy. The insurer became aware of a potential coverage defense after questioning the insured and finding out the vessel was likely outside of the geographical coverage area. Id. at 1205-06. Instead of sending the insured a reservation of rights letter as initially planned, the insurer hired a coverage defense attorney and a claim investigator. Id. at 1201, 1205-06. Without informing the insured about the coverage issue or the defensive purpose of his inquiries, the investigator interviewed the insured and the vessel's crew members. Id. at 1206. After obtaining information that was adverse to the insured, the insurer then formally announced its coverage defense and its reservation of rights.

ORDER – Motions for Summary Judgment    - 10 -

The Alaska Supreme Court held that although there was no coverage for the accident under the terms of the policy, coverage by estoppel was warranted. It found that the insurer breached the duty of loyalty—more particularly its duty to provide a conflict-free defense—by conducting a formal coverage investigation without informing the insured or his counsel about the coverage conflict. The court explained that an insurer's duty to inform the insured about potential coverage issues "attaches when an insurer has good reason to believe that a coverage dispute may exist." Id. at 1204. The insurer must then take steps to make certain the insured knows about and understands the issue. Id. at 1204. The court found that the insurance company had a duty to give the vessel owner notice of the coverage dispute by the time it hired a defense attorney to develop a case against coverage and thus breached this duty when it failed to notify the owner of its intent to dispute coverage and to make sure the owner understood the dispute. Id. at 1204, 1206. The court further held that the insurer's subsequent coverage investigation, which garnered information adverse to the insured, necessarily harmed the insured so as to warrant estoppel. Id. at 1209. It rejected the insurer's argument that there was no showing of harm because indisputable evidence apart from the interviews proved the vessel was outside the geographical boundaries of coverage: "[The insured] was required to show only that [the insurer's] conduct caused some actual harm to [him], not that it changed the outcome of the case." Id. at 1207-08.

  Defendants argue that Fulton is applicable here. State Farm became aware of Aero Services' insurance policies on January 26, 2023. On that day, according to defendants, State Farm had "good reason to believe that a coverage dispute [existed]," triggering its duty to inform Bristor about the potential conflict. They argue State Farm breached this duty when Newman subsequently interviewed Bristor about whether his errand on the day

of the accident could be linked to Aero Services. Bristor admitted his errand was personal and disclosed the details of that day, which had no connection to Aero Services. Defendants argue that because State Farm obtained information adverse to Bristor's coverage during its conversations with him, coverage by estoppel necessarily applies.

Defendants overreach with their reliance on Fulton. The court in Fulton did not hold that any insurer contact with the insured about coverage in the face of a possible coverage defense constitutes a material breach of the duty of loyalty and coverage by estoppel. Rather, in Fulton, the court concluded that the insurer "had a proper basis to give [the insured] notice by the time it hired [an attorney] to develop its coverage case." Id. at 1206. Subsequent contact of the insured without notice after the decision to pursue a defense had been made was improper. At that time, all elements needed for a breach of duty and estoppel were present: (1) the insurer knew about the coverage defense based on the vessel's location; (2) it decided not to send an already drafted reservation of rights letter to the insured but instead opted to conduct an investigation without notifying the insured; (3) the insured was not aware that there was a coverage investigation; (4) and the insured was harmed by the investigation because the insurer was able to freely obtain information that was adverse to the insured's interest. In other words, the Alaska Supreme Court found a breach of the duty of loyalty based on a lack of notice about the insurance company's intent to challenge coverage and upheld the application of estoppel because the insurer gained an unfair advantage through a deceptive interview process.

Since Fulton, the Alaska Supreme Court has reiterated the requirement that insurance coverage by estoppel requires the application of the traditional standards, including a showing that the insured relied on the insurer's conduct to its detriment. Attorneys Liab. Prot. Soc'y, 838 F.3d at 982. It has explained that harm to the insured

occurs when an insurer gains "an unfair advantage by misleading, deceiving, or withholding information from the insured." Attorneys Liab. Prot. Soc'y, 838 F.3d at 982. Coverage by estoppel remains an "extreme remedy." Progressive Cas. Ins. Co. v. Skin, 211 P.3d 1093, 1103 n. 38 (Alaska 2009).[43]

Unlike in Fulton, there is no showing that State Farm was misleading or deceptive in its coverage inquiry, that State Farm conducted an independent, third-party inquiry as to the accident in question, or that it gained an unfair advantage from its contact with Bristor about additional coverage. Rather, the undisputed facts demonstrate that Bristor had adequate notice about the issue with coverage under his business policies. Here, Bristor did not suffer any prejudice from his subsequent conversations with State Farm.

Newman kept Bristor abreast of all potential coverage issues. When Bristor first filed the claim for coverage under his personal auto policy, State Farm promptly informed him about his policy's limits and his risk of excess exposure outside those limits and of his right to independent counsel.[44] Newman immediately informed Bristor when the Knuutila's attorney mentioned Aero Services' policies, and she asked him for information

---

[43] In Nautilus Ins. Co. v. Iliamna Dev. Corp., No. 3:10-cv-0008-HRH, 2012 WL 13029476 (D. Alaska Nov. 19, 2012), the court stressed that Fulton did not do away with the requirement of "actual harm," stating the case "does not stand for the proposition that insurance by estoppel can be based upon nothing more than the contact of insured as to coverage without notice of there being a coverage dispute." Id. at *11. Instead, based on the specific facts in Fulton, "estoppel arises when the insurer recognizes a coverage issue, determines to investigate it, fails to notify the insured before undertaking the investigation, and thereafter, as a result of information learned . . . the insured suffers harm." Id. It also found that "it would not be fair [to the insurer] for the court to presume harm or prejudice [to the insured] where . . . the court finds that [the insured] . . . knew there was a coverage issue[.]" Id.

[44] Docket No. 45-3; Docket No. 45-5.

about these other policies.⁴⁵  Bristor disclosed he in fact had commercial policies in Aero Services' name but that "[h]e was not on company business when the accident occurred."⁴⁶ Then, a few days later, after talking with Aero Services' insurance agent and contacting Bristor again, Newman at the outset informed Bristor about the Knuutila's request for Aero Services' insurance policies.⁴⁷  Bristor was therefore informed and aware of the coverage issue related to his business policies.  The evidence also shows that Bristor understood the consequences of admitting he was not engaged in any business activity on the day of the accident.⁴⁸  See Fulton, 2 P.3d at 1204 ("[W]hen a potential conflict is identified, a liability insurer should promptly take steps to ensure theat the insured is made fully aware of and understands the problem.") (internal quotation marks omitted).  Indeed, at this time, Bristor had not yet asserted a claim or sought coverage under these business policies and the parties were simply considering other sources of coverage.  As such, there was no material breach of the duty of loyalty for failure to inform Bristor about a potential coverage dispute.

Moreover, the evidence does not show any harm to Bristor that would warrant estoppel.  The fact that Bristor initially filed the claim for coverage under his personal auto policy, not his business policies, suggested at the outset that these errands were of a personal nature.  He verified as much when disclosing that he had commercial policies

---

⁴⁵Docket No. 45-6.

⁴⁶Docket No. 45-6.

⁴⁷Docket No. 45-8.

⁴⁸Docket No. 45-8.

ORDER – Motions for Summary Judgment     - 14 -

under Aero Services' name.⁴⁹ When talking with Bristor on January 30, Newman did not gather new adverse information but simply reaffirmed what was already disclosed by Bristor in the days following the accident; namely, that he was running personal errands at the time of the accident.

The court concludes that State Farm is entitled to summary judgment as to defendants' claims for breach of contract and coverage by estoppel.

Implied Covenant of Good Faith and Fair Dealing

Defendants also raise a claim based on the implied covenant of good faith and fair dealing. They do not provide a separate argument for this claim, instead relying on Fulton for the fact that an insurance company cannot undertake a coverage investigation without notice of a potential dispute: "[State Farm's] [i]mproper investigation . . . constitutes a breach of contract and a breach of the covenant of good faith and fair dealing[.]"⁵⁰ Fulton did not specifically address the application of the implied covenant of good faith and fair dealing to this type of situation. It merely acknowledged the trial court's finding that the insurer breached the implied covenant by treating the insured vessel owners unfairly. It declined to address the issue any further, however, because the insurers did not dispute this conclusion. Fulton, 2 P.3d at 1209 n. 40.

In Alaska, a breach of the covenant of good faith and fair dealing can create both contract and tort liability. Lockwood v. Geico Gen. Ins. Co., 323 P.3d 691, 697 n.19 (Alaska 2014). In the contract context, the covenant prohibits the insurer from acting to deprive the insured of the benefit of the contract (subjective element) and requires that

---

⁴⁹Docket No. 45-6.

⁵⁰Docket No. 47 at 6.

each party act in a manner that is reasonably fair (objective element).  Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp., 221 P.3d 977, 992 (Alaska 2009).

What constitutes bad faith in the tort context is less developed.  The Alaska Supreme Court has not precisely defined the elements of the tort of bad faith in the insurance context, but at a minimum it requires an insurer to have acted in a way that was "objectively unreasonable under the circumstances."  Lockwood, 323 P.3d at 697-98.  "Whether the insured must *also* show some sort of culpable mental state in addition to objective unreasonableness ... is a matter left open by [the] case law."  Id. at 697 n. 21.

Ultimately, whether defendants' claim asserting a breach of the covenant of good faith and fair dealing is one for contract or tort liability, the court must consider, at a minimum, whether State Farm's conduct can be considered objectively unreasonable.  The issue of reasonableness does not automatically foreclose summary judgment: "[W]here the insurer establishes that no reasonable jury could regard its conduct as unreasonable, the question of bad faith need not and should not be submitted to the jury."  Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1325 (Alaska 1993).

The inquiry regarding good faith and fair dealing coincides with issue of estoppel.  That is, whether State Farm acted in an objectively unreasonable manner for purposes of good faith and fair dealing is synonymous with whether it obtained an unfair advantage by misleading or withholding information for purposes of applying estoppel.  As noted above, given the facts of this case, where Bristor was aware of the coverage issue and its ramifications and there was otherwise no subterfuge or withholding of information by State Farm, no reasonable jury could regard State Farm's conduct as objectively unfair.

Consequently, State Farm is entitled to summary judgment as to defendants' counterclaim for a breach of the implied covenant of good faith and fair dealing.

Conclusion

State Farm's motion for summary judgment[51] is granted and defendants' motions for summary judgment[52] are denied. State Farm is entitled to summary judgment as to all remaining claims in this case.

DATED at Anchorage, Alaska this 27th day of March, 2025.

/s/ H. Russel Holland
United States District Judge

---

[51] Docket No. 45.

[52] Docket Nos. 46, 47.

ORDER – Motions for Summary Judgment - 17 -